# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 23-606V

| | |
|---|---|
| ALLISON HINE,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: July 30, 2025 |

*Paul R. Brazil*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Eleanor Hanson*, U.S. Department of Justice, Washington, DC, for Respondent.

**RULING ON ENTITLEMENT**[1]

On April 28, 2023, Allison Hine filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by a tetanus-diphtheria-acellular pertussis ("Tdap") vaccine administered on February 7, 2022. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Relevant Procedural History

On January 9, 2024, Respondent filed a Rule 4(c) Report opposing compensation, because Petitioner could not meet the severity requirement of the Vaccine Act. ECF No. 15 at 4 - 6. On March 22, 2024, Petitioner was ordered to submit a Motion for a Ruling on the Record, as well as any additional information addressing issues raised in Respondent's Rule 4(c) Report. ECF No. 16.

Petitioner did so on April 26, 2024. Petitioner's Motion for a Ruling Regarding Entitlement ("Mot."), ECF No. 18. Respondent opposed the motion on May 23, 2024, reiterating the arguments set forth in the Rule 4(c) Report. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 19. Petitioner did not file a reply. The matter is ripe for resolution.

## II. Relevant Factual History

Petitioner's past medical history notes that Petitioner was 28 weeks pregnant at the time of vaccination, and had no reports of prior left shoulder issues. Ex. 2 at 16. On February 7, 2022, Petitioner received the flu vaccine in her left shoulder. Ex. 1.

Five days later, on February 11, 2022, Petitioner contacted her OBGYN and informed the nurse that after her vaccination, "her arm had been very sore" and that "it maybe getting worse". Ex. 6 at 157. It was recommended that Petitioner use Tylenol, ice her shoulder, and follow up with her primary care provider. *Id.*

On February 13, 2024, Petitioner presented to Wellness Span Urgent Care for left shoulder pain. Ex. 2 at 16. Petitioner stated she received her Tdap vaccine the previous Monday and was having pain in the shoulder ever since. *Id.* Petitioner also stated that the injection was placed "higher than usual." *Id.* Physical examination showed her shoulder was tender to palpitation, she had pain at the end of range of flexion and abduction, and positive signs of impingement. *Id.* Petitioner was diagnosed with bursitis and was instructed to continue with ice and Tylenol. *Id.* at 16.

Petitioner returned to urgent care for abdominal pain on February 15 and 18, 2024. Ex. 2 at 18. There are no reports of shoulder pain at that time.

On March 3, 2022, Petitioner had an appointment with her primary care provider for left shoulder pain. Ex. 3 at 87. Petitioner stated the pain started after receiving her Tdap vaccination, approximately four weeks prior. *Id.* at 91. Physical examination showed normal strength and range of motion and Petitioner was diagnosed with bursitis. *Id.* It was

noted that "treatment options limited by patient's pregnancy." *Id.* She was advised to rest, ice, take Tylenol as needed, and referred to physical therapy. *Id.*

Petitioner received a physical therapy evaluation on March 8, 2022. Ex. 4 at 13. At that time, she showed "limited L[eft] shoulder range of motion secondary to pain" and reduced strength. *Id.* Petitioner's treatment plan was one to two sessions per week for four weeks, however, she was unable to attend any additional sessions due to out-of-pocket liability. Ex. 3 at 125 (indicating Petitioner paid $500 for her initial session).

Petitioner gave birth to her baby on April 29, 2022. Ex. 6 at 183. In the interim period (between March 3 and September 28, 2022), she had four medical appointments that did not specifically reference shoulder pain. On April 23, 2022, Petitioner reported that her water may have broken, and she may be in labor. Ex. 6 at 166. Petitioner was seen for worsening postpartum depression and anxiety on May 25, 2022. Ex. 3 at 108. On June 9, 2022, Petitioner was seen for a post-partum visit. Ex. 6 at 197-201. Petitioner had another follow-up with her OBGYN on September 26, 2022, and to address an abdominal hernia. Ex. 6 at 207. At this appointment Petitioner had complaints of joint pain, however, did not specially describe shoulder pain. *Id.* at 209.

On September 28, 2022, Petitioner saw her primary care provider for ongoing left shoulder pain "post Tdap from pregnancy." Ex. 3 at 125. Physical examination showed Petitioner had tenderness and pain, but no signs of impingement, normal strength, and normal range of motion. *Id.* She was diagnosed with bursitis and again referred to physical therapy. *Id.* at 124. Petitioner also received a steroid injection. *Id.* at 127.

Petitioner has submitted a declaration in support of her petition on April 26, 2024. Ex. 7. Therein, she explains that she struggled with medical issues following the birth of her daughter on April 29, 2022, including a hernia, post-partum anxiety, and depression. *Id.* at 1. Additionally, at that time she was caring for her three-year-old. However, by September of 2022 she "was ready to get [her] shoulder figured out." *Id.*

### III. Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must preponderantly prove the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or

3

that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

---

underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. See § 11(c)(1)(A)(B)(D)(E).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Severity Requirement

The first issue to be resolved is whether Petitioner has demonstrated that she suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

There is no dispute that Petitioner received the flu vaccine on February 7, 2022. Therefore, she must demonstrate by preponderant evidence that her residual symptoms continued at least through August 7, 2022 (assuming onset of pain the day of vaccination). *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's injury resolved less than two months after onset).

The record establishes that Petitioner's initial treatment occurred during her third trimester, between February and March 2022. Ex. 6 at 157; Ex. 4 at 13. After her initial physical therapy appointment on March 3, Petitioner next sought care on September 28, 2022. Ex. 3 at 125. She stated at that time that she was experiencing ongoing shoulder pain "post Tdap from pregnancy." Ex. 3 at 125.

Respondent argues that Petitioner cannot establish severity due to the delay in treatment of nearly seven months. Opp. at 6. However, the record from September of 2022, states that Petitioner sought care for "*ongoing* left shoulder pain" (emphasis added), suggesting that her shoulder had not completely improved. Ex. 3 at 125. Additionally, Petitioner's declaration indicates that following the birth of her child, her shoulder was not a priority due to post-partum issues. Ex. 7 at 1. Delaying treatment for these reasons is not unreasonable.

Respondent also argues that Petitioner had four intervening medical appointments wherein she did not complain of left shoulder pain. Opp. at 6. However, as Petitioner notes, these four appointments were for specific reasons related to her post-partum conditions including depression, anxiety, and an abdominal hernia. Mot. at 6-7. It is reasonable to not mention shoulder pain when seeking specific care for these conditions. Ex. 6 at 166 (record from April 23, 2022); Ex. 3 at 108 (record from May 25, 2022 addressing post-partum mental health issues); Ex. 6 at 197-201 (record from June 9, 2022 for a post-partum visit); Ex. 6 at 207 (record from September 26, 2022 pertaining to an abdominal hernia).

The overall record thus constitutes a sufficient, albeit close, showing of severity to meet the evidentiary standard. It is likely that Petitioner's symptoms persisted throughout the summer of 2022 and through the six-month deadline, despite the cessation of formal treatment and subsequent gap. However, the consistently light history of treatment suggests a mild injury - which will likely impact damages in this case.

### B. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion. I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported shoulder pain on February 11, 2022. Ex. 6 at 157. Respondent does not dispute that Petitioner meets this criterion.

### 3. Petitioner's Pain was Limited to her Left Shoulder

Petitioner's pain was limited to her left shoulder. Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

### C. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on February 7, 2022, in the United States. Ex. 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 5; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

**Conclusion**

In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master